Although the underlying suit involves contracts for supplying natural gas, these appeals and this petition for writ of mandamus *Page 1213 
concern only preliminary injunctions ordering a counterclaim defendant, Chunchula Energy Corporation, to deposit $904,000.00 in escrow with the circuit clerk pending resolution of the claims. There was evidence that Chunchula distributed dividends of $1,612,169.25 to its sole stockholders, Dr. and Mrs. Gerald L. Wallace, after this controversy arose, thereby disposing of nearly all of its assets except for disputed claims arising out of the contracts at issue in this suit. In addition to the question of the merits of the injunctions, the case presents numerous procedural questions relating to the issuance of the injunctions.
In 1976, Chunchula entered into a contract to purchase gas from Ciba-Geigy Corporation. Shortly thereafter, it entered into contracts with Conecuh-Monroe Counties Gas District, an Alabama corporation, and with Mobile Gas Service Corporation to sell gas to those two entities. From 1976 through March of 1985 Chunchula's sole source of income was the sale to Conecuh-Monroe and Mobile Gas of gas purchased from Ciba-Geigy. There was testimony that Chunchula earned more than $1 million per year during each of these years.
Due to disagreements over the pricing, source, and pressure of the gas supplied, Conecuh-Monroe filed a declaratory judgment action against Chunchula on February 28, 1984. Conecuh-Monroe requested a declaration that Chunchula had breached certain contract terms, and that those breaches justified Conecuh-Monroe's not paying for some or all of the gas supplied. Chunchula filed a third-party claim against Ciba-Geigy, alleging that if Conecuh-Monroe was entitled to relief against Chunchula, then Chunchula was entitled to commensurate relief against Ciba-Geigy. Chunchula also filed a counterclaim against Conecuh-Monroe, requesting payment of the disputed sums.
On June 13, 1984, Ciba-Geigy filed an answer to the third-party complaint and a counterclaim against Chunchula. There were further pleadings and amendments to pleadings, notably Ciba-Geigy's amended counterclaim of March 18, 1985, which included count five, requesting a preliminary injunction requiring "that all sums due to Chunchula . . . from its customers . . . be paid, when due, into the registry of this Honorable Court," to be paid to Ciba-Geigy or held until final determination of the various claims in the action.
On March 27, 1985, Ciba-Geigy filed a further amendment to its counterclaim, adding count six, also requesting a preliminary injunction. This count recited facts pertinent to the request for creation of an escrow fund, including specifies relative to the disbursements of funds by Chunchula to the Wallaces. One such disbursement, of $200,000.00, had been made on March 19, 1985, the day after Ciba-Geigy filed its first amended counterclaim.[1] Among other relief, count six requested that the court would
 "Provide that the sums paid to Dr. and Mrs. Gerald L. Wallace be repaid to Chunchula Energy Corporation by them and that said sums then be marshalled by the court in an escrow account pending the resolution of the matters at issue in the counterclaim so that said sums can be utilized for the satisfaction of any judgment rendered in favor of counterclaimant against Chunchula Energy Corporation."
The amended counterclaim also requested the court to "[f]ix the reasonable amount of security to be posted as a bond by the surety for Ciba-Geigy Corporation pursuant to Rule 65[, A.R.Civ.P.]."
The court held a hearing on the requests for preliminary injunction on June 27, 1985. On August 9, 1985, the court entered an order finding that Ciba-Geigy was entitled to injunctive relief and ordering Chunchula *Page 1214 
to pay $904,000.00 into escrow with the circuit clerk, to be held until final resolution of the action.
On August 23, 1985, Chunchula filed a motion to stay the order pending appeal, a motion to dissolve the preliminary injunction or in the alternative to modify the injunction, a motion to alter or amend the injunctive order, and a notice of appeal to this Court.
On December 10, 1985, the trial court entered an "amended order on motion for preliminary injunction." The court stated that it was granting, in part, Chunchula's motion to alter or amend the injunctive order. Chunchula's motion had protested that it was impossible for Chunchula to comply with the injunction, that the order failed to set forth reasons for its issuance, and that the court erred in granting the order without requiring Ciba-Geigy to post a bond. These and other matters were set out in detail in the motions filed on August 23. The court's amended order stated in part:
 "This court is of the opinion that CIBA-GEIGY's motion for Injunctive Relief pending the trial of this case on the merits is due to be and is hereby granted. It is the express finding of this court that Dr. Gerald Wallace and his wife, Mrs. Celia Wallace, own substantially all of the shares of Chunchula Energy Corporation stock. Dr. Wallace and Mrs. Wallace ran the company and instructed the bookkeeper of Chunchula Energy Corporation, Linda McDonald, when and to whom disbursements were to be made from the profits of the company. Evidence was presented showing that the only disbursements made from Chunchula Energy Corporation were to either Dr. Wallace or Mrs. Wallace.
 "It is the express finding of this court that Dr. Wallace and Mrs. Wallace are the alter ego of Chunchula Energy Corporation and that their actions are the actions of Chunchula Energy Corporation. They control the corporation, received all benefits from the corporation, and directed the corporation's activities in every respect.
 "It is the further finding of this court that at the direction of Dr. Wallace and Mrs. Wallace, substantial sums of money were distributed to them when they owed invoices to Third-Party Defendant, CIBA-GEIGY Corporation and when they knew of outstanding obligations to CIBA-GEIGY Corporation. These distributions resulted in Chunchula Energy Corporation's cash balance being reduced to approximately $104,000.00 as of the date of the injunction hearing. Distributions were made to Dr. Wallace and Mrs. Wallace which totalled $812,169.25 after receiving an invoice from CIBA-GEIGY of $483,407.62, which invoice has never been paid. Those distributions to Dr. Wallace and Mrs. Wallace began on or about October 15, 1984 and extended to March 19, 1985. Prior to that, Dr. Wallace received distributions of $800,000.00 in April of 1984. Therefore, Dr. Wallace and Mrs. Wallace received distributions totalling $1,612,169.25 beginning on or about April 2, 1984 up to March 22, 1985. These distributions in turn left the cash balance of Chunchula Energy Corporation only the $104,000.00 which was represented to be the cash balance at the time of the injunctive hearing. Since the injunctive hearing, that $104,000.00 has been reduced further.
 "Said distributions were made during the last year of the contract between Chunchula Energy Corporation and CIBA-GEIGY. This contract allowed Chunchula to receive gas from CIBA-GEIGY. Chunchula in turn distributed gas to two customers and received payment for said distributions. Said contract between Chunchula and CIBA-GEIGY expired March 11, 1985. That contract was the only asset of Chunchula Energy Corporation. . . .
 "Separate corporate existence will not be recognized where a corporation is controlled and its business conducted in such a manner as to make it merely an instrumentality of another, and in such circumstances the corporation will not be permitted to evade its just responsibilities. The corporate entity cannot masquerade through its officers and stockholders so *Page 1215 
as to defeat the payment of its just obligations. The distributions from Chunchula Energy Corporation to Dr. Wallace and Mrs. Wallace between April, 1984 and March, 1985 illustrate a disregard of the corporate entity by the stockholders, in which the corporation was a mere instrumentality for the transaction of their own affairs.
 "It is the express finding of this court that the distributions made to Dr. and Mrs. Wallace in light of the facts and circumstances cited herein have left CIBA-GEIGY Corporation in a position of irreparable injury and harm if injunctive relief is not granted in their favor ordering funds to be placed in escrow pending the outcome of this litigation. CIBA-GEIGY's claim against Chunchula greatly exceeds the current assets left in Chunchula Corporation after these distributions to Dr. and Mrs. Wallace. Failure to order said security will result in CIBA-GEIGY being left with no remedy against Chunchula Energy Corporation because of the actions of Dr. Wallace and Mrs. Wallace in ordering that funds be distributed to them from Chunchula Energy Corporation.
 "WHEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED that Chunchula Energy Corporation pay to the clerk of the Court of Escambia County, Alabama the sum of $904,000.00. The clerk of the court is further ordered to deposit said sum in an interest bearing account until final resolution of this action. It is the express finding of this court that this order be binding upon not only Chunchula Energy Corporation but [also] Dr. Gerald Wallace and Mrs. Celia Wallace as they were in all respects acting as Chunchula Energy Corporation in ordering and receiving the distributions referred to in this order.
 "It is further ORDERED, ADJUDGED and DECREED that CIBA-GEIGY Corporation post a bond in the amount of $25000.00 . . . as security for costs incurred by Chunchula Energy Corporation or Dr. and Mrs. Wallace as a result of this injunctive relief."
On December 23, 1985, Chunchula filed both a notice of appeal from this order and a petition for writ of mandamus to the circuit judge. The petition for writ of mandamus presents the contentions that the circuit court had no jurisdiction to enter the order because of the prior appeal, that the order violated the Wallaces' right to due process, and that the finding that the Wallaces were the alter ego of Chunchula was not supported by any pleading or proof. The appeals and the petition for writ of mandamus were submitted in due course for this Court's consideration.
A party may appeal from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or modify an injunction," provided that the appeal is filed within 14 days of the entry of the order. Rule 4(a)(1), A.R.A.P. The filing of such a notice of appeal does not, however, deprive the trial court of the power to amend a preliminary injunction:
 "When an interlocutory or final judgment has been rendered granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of an appeal from such judgment upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. The power of the court to make such an order is not terminated by the taking of the appeal."
Rule 62(c), A.R.Civ.P.
Rule 65(c) provides in part that "No . . . preliminary injunction shall issue except upon the giving of security by the applicant." Rule 65(d)(2) requires, among other things, that "Every order granting an injunction shall set forth the reasons for its issuance." These provisions are mandatory.Tapscott v. Fowler, 437 So.2d 1280 (Ala. 1983); Anders v.Fowler, 423 So.2d 838 (Ala. 1982); International Brotherhood ofElectrical Workers v. Morton, 365 So.2d 662 (Ala. 1977). Therefore, the original *Page 1216 
injunction is defective and is due to be reversed.
The petition for writ of mandamus would have this Court set aside the order of December 10 on the ground that the trial court lost jurisdiction when the original notice of appeal was filed. Chunchula argues that the above-quoted provision of Rule 62 applies only to orders to preserve the status quo or amendments made appropriate by changes in circumstances. We find no authority for such an interpretation. Cf. 11 Wright 
Miller, Federal Practice and Procedure: Civil, §§ 2904 and 2962 (1973), analyzing the federal courts' treatment of similar issues under the provisions of Rules 62(c) and 65, Federal Rules of Civil Procedure, which are substantially identical in pertinent respects to the corresponding rules in the Alabama Rules of Civil Procedure. Because the trial court retained continuing jurisdiction of the case, the writ of mandamus is due to be denied.[2]
It also follows that the failure to require a bond and the failure to give reasons for the issuance of the injunction were subject to correction by the trial court, and its December 10 order effectively removed any objection to the injunction on these grounds. Correspondingly, the issues raised in the original appeal which are pertinent to the amended injunction, but not raised again in the supplemental brief filed by Chunchula after the amended order was issued, will be deemed to be addressed to both orders of injunction. Normally, an appeal from a later interlocutory order will not raise questions as to any prior orders entered more than thirty days before the appeal. Jones v. Kendrick Realty, 287 Ala. 402, 252 So.2d 61
(1971). Here, however, Chunchula filed notices of appeal from both orders.
We next address the question of whether the trial court erred in making the amended injunction applicable to the Wallaces as alter egos of Chunchula. The Wallaces were never named as defendants or served with notice. Ciba-Geigy argues that the Wallaces were certainly aware of the suit, but this cannot substitute for naming them as parties and raising the alter ego issue in a court which had personal jurisdiction over them in their individual capacities. See Zenith Radio Corp. v.Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562,23 L.Ed.2d 129 (1969). In Zenith, the United States Supreme Court held that an injunction against a corporation which owned the stock of the defendant corporation was void as against the parent corporation, which was not a party to the action.
A judgment is void as to persons not named as parties to the complaint, served with notice, and given an opportunity to be heard. Zenith, supra; Nigg v. Smith, 415 So.2d 1082 (Ala. 1982); State v. Hertz Sky-center, Inc., 294 Ala. 336,317 So.2d 324 (1975); Rogers v. Smith, 287 Ala. 118, 248 So.2d 713
(1971). Therefore, the amended injunction cannot bind the Wallaces as it purports on its face to do.
The appropriateness of the injunction as against Chunchula remains to be discussed. A trial court has wide discretion in determining whether to grant a preliminary injunction, and its decree will not be disturbed on appeal unless an abuse of that discretion is shown. Nevertheless, a trial court may be found to have abused its discretion where the decree violates some established rule of law or principle of equity or shows a clear and palpable error which results in manifest injustice.Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17
(Ala. 1983); Watts v. Victory, 333 So.2d 560 (Ala. 1976);Lorch, Inc. v. Bessemer Mall Shopping Center, Inc., 294 Ala. 17, 310 So.2d 872 (1975); Valley Heating, Cooling ElectricCo. v. Alabama Gas Corp., 286 Ala. 79, 237 So.2d 470 (1970). *Page 1217 
An injunction will not issue unless without it the plaintiff would suffer immediate and irreparable injury and unless the plaintiff has no adequate remedy at law. Teleprompter ofMobile, Inc. v. Bayou Cable TV, supra; First City National Bankof Oxford v. Whitmore, 339 So.2d 1010 (Ala. 1976); Watts v.Victory, supra.
It is clear that Ciba-Geigy is not subject to immediate and irreparable injury and that it has adequate remedies at law. The injury is not immediate, because it has not even obtained a judgment against Chunchula, much less one that it cannot enforce. The possibility certainly exists that Chunchula will obtain a judgment on its counterclaim against Conecuh-Monroe or that, if Conecuh-Monroe's defenses prevail against Chunchula, Chunchula's defenses might likewise prevail against Ciba-Geigy. We make no judgment on these matters; we mention them merely to point out that Ciba-Geigy's possible injury is contingent, not immediate. "Injunctions will not be granted 'merely to allay apprehension of injury; the injury must be both imminent and irreparable in a court of law.' " Teleprompter of Mobile, Inc.v. Bayou Cable TV, supra, 428 So.2d at 1920 (citation omitted).
Neither would any injury to Ciba-Geigy necessarily be irreparable. See King v. Coosa Valley Mineral Products Co.,283 Ala. 197, 215 So.2d 275 (1968); Dudley v. Smith, 504 F.2d 979
(5th Cir. 1974); and Denniston Co. v. Jackson, 468 So.2d 170
(Ala.Civ.App. 1985). There is also a legal remedy for attachment of assets. See Code 1975, § 6-6-30 et seq. Thus Ciba-Geigy also has adequate remedies at law for any difficulty it might have in collecting any judgment it might obtain against Chunchula.
For the foregoing reasons, the petition for writ of mandamus in case number 85334 is due to be denied, and the preliminary injunctions in cases number 84-1226 and 85-335 are due to be reversed. It is so ordered.
WRIT DENIED; REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ. concur.
[1] Chunchula's accountant testified that this disbursement was made to enable the Wallaces to pay taxes on Chunchula's income for the previous year. Because Chunchula is a Subchapter S corporation, its income is taxable to the Wallaces whether the income is distributed or not. The accountant also testified that the other disbursements to the Wallaces during the period after the controversy arose were ordinary distributions of income similar to those made in prior years.
[2] The second and third issues raised in the petition relate to the merits of the second appeal and will be discussed accordingly.