42 So.3d 719 (2008)
Clint FOLSOM
v.
STAGG RUN DEVELOPMENT, LLC, et al.
2061126.
Court of Civil Appeals of Alabama.
September 5, 2008.
*720 Jesse P. Evans III and Michael B. Odom of Haskell Slaughter Young & Rediker, LLC, Birmingham, for appellant.
Jack H. Harrison of Scott, Sullivan, Streetman & Fox, PC, Birmingham; and Randy A. Dempsey and F. Wade Steed of Dempsey, Steed, Stewart, Ritchey & Gaché, LLP, Birmingham, for appellees.

On Application for Rehearing
PITTMAN, Judge.
The opinion of this court of May 9, 2008, is withdrawn, and the following is substituted therefor.
Clint Folsom appeals from an order of the Shelby Circuit Court denying his request for a temporary restraining order to prevent Stagg Run Development, LLC *721 ("Stagg Run"), Homer Lynn Dobbs, Sr. ("Dobbs"), and Homer Lynn Dobbs, Jr. ("Lynn"),[1] from moving an easement that provides street and utility access to Folsom's lot and crosses through part of Stagg Run's property.
On January 6, 1984, Robert L. Burr executed an instrument creating an easement across certain property that he owned in Shelby County. The instrument was recorded in the probate judge's office on March 6, 1984; the easement created by the instrument generally follows the course of a former dirt road, which is now a concrete driveway. The language of the instrument provides, in pertinent part:
"At a later date, if a new and shorter road is built with the entrance coming off Indian Trail all property owners would be expected to use this road, but the cost of this road would be for the owner or owners of Lots W, Y, and Z.
"At all times there will be a road which will be open so the owners of Lots W, X, Y, and Z can reach their property."
Inside that easement, and running generally along the southern boundary lines of Lots W, Y, and Z, is the concrete driveway, which has provided Folsom's only road access to his lot; the driveway meanders approximately one-half of a mile through mostly wooded property.
Stagg Run purchased several parcels of property from Burr that abutted Folsom's lot on its southern and western boundaries ("the adjacent property"). Stagg Run purchased the adjacent property with the expressed intention to develop a residential subdivision that would border Folsom's parcel on two sides. Folsom's easement currently crosses through the central section of the adjacent property. As part of its subdivision-development process, Stagg Run had prepared a plat showing its intention to destroy the concrete driveway and to relocate all Folsom's utility-service lines in order to "move" the easement to a more convenient location to facilitate placing houses in the proposed subdivision. Under Stagg Run's plan, a new access road and Folsom's utility-service lines would be located in a "new" easement that would branch off an extension of Deer Mountain Circle (renamed "Stagg Run Trail") and not Indian Trail as provided in the recorded instrument creating Folsom's existing easement.
Although Folsom's property is located in an unincorporated area of Shelby County, the Stagg Run subdivision is situated in the City of Indian Springs ("the City"). Before trial, the City had issued its approval of the subdivision plans that included the proposed relocation of Folsom's easement. On February 23, 2007, Folsom filed in the trial court, among other documents, a verified application for a temporary restraining order and a request for a preliminary injunction to prevent Stagg Run from relocating Folsom's easement.
On March 6, 2007, the trial court conducted an ore tenus proceeding during which Folsom, Dobbs, and Melissa Cosby (a real-estate appraiser) testified regarding the planned subdivision and its impact on Folsom's easement. Folsom testified that he feared Stagg Fun's subdivision-construction plans would not only interrupt the utility conduits along the easement that were providing water and power to his residence and his workshop, but also that the heavy construction equipment would irreparably damage the concrete driveway before Stagg Run could provide Folsom alternative road access to his property.
*722 Folsom stated that he had purchased Lot X from Burr in 1994; after purchasing the lot, he had discovered that the utility lines serving his house were located beside the driveway and within the easement boundaries. In addition, Folsom stated that approximately six years before trial he had paid several thousand dollars to have a three-phase power line installed within the easement boundaries to provide electricity for his business, i.e., a workshop that he had built on his lot. Folsom testified that just before Stagg Run had completed its purchase of the adjacent property from Burr, he had determined that Stagg Run's proposed subdivision, if built, would disrupt both his home business and access to his residence for an undetermined period of time and that he had decided that he could not agree to the Dobbses' request for him to "waive" his easement rights. After Stagg Run had purchased the adjacent property, Folsom stated, he was informed that although the Dobbses were planning to destroy the concrete driveway, they did not intend to provide a new road or to relocate his utility-service lines until after completing construction of the subdivision. Based upon that information, Folsom stated that he had decided to file a request for an injunction to prevent Stagg Run from destroying access to his lot and from interrupting his utility services.
Melissa Cosby testified that while she was touring the initial excavation at the subdivision site with one of the county engineers, she had encountered Lynn, who was overseeing some of the construction and excavation work near Folsom's easement. She testified that Lynn had told her that at the time Stagg Run began running heavy bulldozers across the easement boundaries the following week, the consequence to Folsom's driveway would be to "bust it all to pieces." Cosby stated that in answer to her query as to how Folsom would access his property during construction, Lynn had stated that he would level or grade the dirt every night so Folsom would have some access but that Stagg Run was "going to bust that driveway up." Cosby testified that she had understood from Lynn that Stagg Run would begin excavating and moving large amounts of dirt across the easement within a few days of their conversation.
Regarding Stagg Run's proposed subdivision, Dobbs testified that during the three months immediately before borrowing the funds to purchase the adjacent property, Stagg Run had been involved in a series of meetings with the City and Folsom to discuss the planned subdivision. Those meetings were held for the purposes of informing the community of Stagg Run's plans, obtaining the City's zoning and building permits for the subdivision, and seeking Folsom's permission to move the easement and the utility-service lines within the easement to conform to the subdivision plat and plans. When Folsom did not initially object to Stagg Run's plans, Stagg Run began the process of finalizing its land purchase of the adjacent property. Just a few days before closing the transaction, Dobbs sent Folsom a letter that contained a draft release form for Folsom to sign before Stagg Run would begin the relocation of the concrete driveway and utility lines. Folsom refused to sign the release and responded to Dobbs's proposal by sending a letter in which he asserted that the construction of Stagg Run's subdivision would impermissibly encroach upon his daily use of the easement and would interfere with his ownership of and his access to his residence and business. Folsom insisted that Stagg Run purchase the existing easement for $250,000 and that Stagg Run agree to construct and pave a new access road to Folsom's lot and to relocate his utility lines *723 before beginning construction on the subdivision. When Stagg Run refused to comply with Folsom's requests, Folsom sought a judicial remedy.
Following the ore tenus proceeding in March, the trial court entered an order on April 4, 2007, denying Folsom's requests for injunctive relief. In that order, the trial court reserved most of the other issues that had been raised in the parties' pleadings for a future trial on the merits; however, that court incidentally opined that Folsom would suffer no monetary damages should Stagg Run relocate the easement in compliance with its preapproved subdivision plan.
From the trial court's order denying injunctive relief, Folsom timely filed a notice of appeal to the Alabama Supreme Court. See Rule 4(a)(1)(A), Ala. R.App. P. However, our Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. The refusal to issue a preliminary injunction is an appealable order; Rule 4(a)(1)(A), Ala. R.App. P., provides that a party can appeal from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction." See Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 (Ala.2006). The standard for reviewing a trial court's grant or denial of a preliminary injunction is whether the trial court acted outside its discretion in granting or denying the preliminary injunction. See also Watson v. Watson, 910 So.2d 765, 768 (Ala.2005).
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala. 1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998) [overruled on other grounds by Pryor v. Reno, 171 F.3d 1281 (11th Cir.1999)]. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390,] 395, 101 S.Ct. 1830[, 1834 (1981)]."
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999); see also Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala.2006).
In this case, the trial court denied Folsom's request for a preliminary injunction. Therefore, we must review the record to see if the trial court's denial of Folsom's request for injunctive relief was outside its discretion, i.e., whether "the trial court committed a clear or palpable error, which, if left uncorrected, would result in a manifest injustice." Watson, 910 So.2d at 768. Under TFT, we must examine whether the trial court could have correctly determined that Folsom did not prove one of the required elements: that he was likely to prevail upon the merits, that there was a substantial threat of irreparable injury if the injunction was not granted, and that the threatened injury to Folsom would outweigh the harm the injunction might cause Stagg Run. We note that Folsom needed to prove all the elements set forth in TFT to obtain the preliminary injunction; if the trial court could *724 properly have determined that Folsom failed to prove any element, we must affirm the trial court's order denying his request for injunctive relief.
On appeal, Folsom contends that, as a matter of law, Stagg Run does not have a legal right to relocate Folsom's easement. Folsom also asserts that he will suffer irreparable harm if Stagg Run is permitted to relocate his easement. Folsom's first contentionthat Stagg Run could not lawfully "relocate" the easementrelies on his conclusion that our Supreme Court's decision in West Town Plaza Associates, Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993), mandates a judgment in his favor. In West Town, the trial court dismissed a request by the owner of a dominant estate for injunctive relief against the owner of a servient estate, but our Supreme Court reversed that decision, stating that "`[t]he owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate, and a court of equity has jurisdiction to enjoin the obstruction of private easements and to require the removal of such obstructions.'" West Town, 619 So.2d at 1296 (quoting Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153, 155 (1963)).
In this case, however, Stagg Run does not propose a permanent obstruction of Folsom's easement rights. As we read the pertinent language of the instrument creating the easement together with Stagg Run's subdivision plan, we see, as the trial court apparently did, that Stagg Run is attempting to comply with the requirements of the instrument to upgrade and relocate the access road to Lots W, X, Y, and Z as stipulated in that instrument. Folsom acknowledges in his brief that the easement was created to allow access to Lots W, X, Y, and Z, which had each been owned by Burr when he created the easement in 1984. The record indicates that Stagg Run purchased at least two of those lots, W and Z, together with a larger parcel that abuts those lots on their southern boundary lines, in order to build its proposed subdivision.[2] Thus, in order to give meaning to the provision in the easement instrument that envisions the replacement of the road within the current easement at the expense of those persons owning Lots W, Y, and Z, the trial court properly interpreted that instrument language as allowing Stagg Run to "relocate" the road that constitutes the reason for the very existence of the easement so long as Stagg Run met the conditions that required absorbing the cost of providing a new, improved access road.
Alabama law is well settled that the trial court must look to the pertinent granting instrument to determine the scope of an express easement. Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala.1988). In construing the written grant of an easement to determine the intention of the parties, the plain meaning of the terms of that writing must be given effect. See Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). We conclude that the trial court did not err when it determined that the language of the instrument creating the easement specifically authorized the building of a new, shorter access road to Lots W, X, Y, and Z at the expense of the owners of Lots W, Y, and Z. Thus, the trial court's denial of Folsom's request for injunctive relief from the "relocation" of the easement and the construction of a new access road was within the trial court's discretion.
*725 Folsom also asserts that the trial court could not properly allow Stagg Run to "relocate" his easement without his permission or without just compensation. Folsom correctly notes that "[a]n easement is property." Magna, Inc. v. Catranis, 512 So.2d 912, 913 (Ala.1987).
"The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate. The fact that an obstruction to an easement is of a minor degree furnishes no standard for justification if the obstruction clearly interferes with the enjoyment of the easement."
Id. (citations omitted); see also Lawley v. Abbott, 642 So.2d 707 (Ala.1994). Unlike easements by prescription or by adverse possession, when an easement is one created by express grant, the scope of the easement is to be determined according to the written language of the instrument creating the easement. See McClendon v. Hollis, 730 So.2d 229, 230 (Ala.Civ.App. 1998); see also Lawley, 642 So.2d at 708.
In this case, the language in Folsom's easement instrument clearly anticipated the movement of the access road at some future time. See, e.g., Hollis, 730 So.2d at 230. From its terms, the specific purpose of Folsom's easement was to provide ingress and egress to lots W, X, Y, and Z; the record indicates that Stagg Run will provide Folsom with a code-compliant, two-lane, paved road to access his property, a road that will replace the concrete driveway that currently runs through the existing easement. The subdivision plans indicate that the new location of the easement, in compliance with the language of the easement instrument, will provide Folsom with a shorter, more direct access road to his property. Thus, we conclude that, based upon the reasoning in the above-cited cases, the trial court could properly have determined that Folsom did not prove either a likelihood of success on the merits or, alternatively, that Stagg Run's proposed relocation of the access road would amount to a harm that could not be alleviated by legal remedies such as an award of money damages.
Without citing any authority, Folsom also asserts that his easement access cannot be relocated unless that access road is built from Indian Trail. Assuming, without deciding, that Folsom's contention is properly before this court, we determine that his argument fails. The evidence established that Deer Mountain Circle is a cul-de-sac that is only accessible from Indian Trail and that Folsom's present driveway begins at a location very close to the end of Deer Mountain Circle. In addition, the undisputed testimony of Dobbs established that the property lying between Indian Trail and Deer Mountain Circle is owned by an unidentified third party; Dobbs also opined that "the topography down there ... is so severe that I doubt it would be practical to try to put a road through there."
In its judgment, under "Item 2," the trial court apparently addressed Folsom's assertion that the easement must be routed directly from Indian Trail and noted:
"B. Although executed in 1984, the document clearly contemplates the future re-location of the driveway. This particular provision contained several conditions, some of which are no longer applicable. However, it is the court's opinion and finding that the overall intent of the parties to that document included the re-location of the driveway and the parties herein are successors in interest to the parties in that document."
Our Supreme Court has stated that, in the exercise of its discretion, a trial *726 court "`"may consider and weigh the relative degree of injury or benefit to the respective parties."'" Adams v. Farlow, 516 So.2d 528, 537 (Ala.1987) (quoting Howell Pipeline Co. v. Terra Res., Inc., 454 So.2d 1353, 1356 (Ala.1984), quoting in turn Double C. Prods., Inc. v. Exposition Enters., 404 So.2d 52, 54 (1981)). This broad power to fashion equity judgments applies in the context of a proceeding in which injunctive relief is sought, and a trial court may refuse to grant injunctive relief as a component of its power to do equity in a given case. "A court may `balance the equities' in deciding whether to grant an injunction, and may specifically consider the `convenience' of the requested relief to both the plaintiff and the defendant." Alabama Power Co. v. Drummond, 559 So.2d 158, 162 (Ala.1990); see also Beavers v. County of Walker, 645 So.2d 1365, 1377-78 (Ala.1994).
Based upon the undisputed evidence establishing that no access road reasonably could be constructed directly from Indian Trail to Folsom's property because of the presence of an intervening owner's property and because of the steep topography, we conclude that the trial court could properly have determined that the specification in the easement instrument concerning the location of the a new, improved access road should not be prospectively applied.
We conclude that the trial court properly denied Folsom's request for injunctive relief; therefore, the trial court's order denying Folsom injunctive relief and reserving the remaining issues for later resolution is due to be affirmed. In affirming, however, we note that the issue of "damage" to Folsom from the proposed relocation of the access road, which the trial court's order denying injunctive relief briefly addressed, is not properly before this court. See Rule 4(a)(1)(A), Ala. R.App. P., and Woodward v. Roberson, 789 So.2d 853, 856 (Ala.2001). Failure to demonstrate an entitlement to injunctive relief does not preclude Folsom from the opportunity to seek and obtain an award of money damages[3] based upon any injury to Folsom's rights resulting from Stagg Run's relocation of the access road to Folsom's property; because the trial court specifically reserved "the other issues" raised by the parties, any damages claim necessarily remains pending because there has been no final hearing in the case. See Woodward v. Roberson, 789 So.2d at 856, and Palmer v. SunBank & Trust Co., 689 So.2d 152, 153 (Ala.Civ.App.1996); see also Rule 54(b), Ala. R. Civ. P.
OPINION OF MAY 9, 2008 WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., dissents, with writing, which BRYAN, J., joins.
MOORE, Judge, dissenting.
I originally concurred in this court's opinion issued in this case on May 9, 2008. In his application for rehearing, Clint Folsom asserts, among other things, that this court failed to address his argument that Stagg Run Development, L.L.C., was not entitled to relocate the easement at issue because the conditions set forth in the recorded instrument authorizing a relocation had not been met. Folsom is correct; this court's original opinion did not address *727 that issue. In the opinion issued today, the court has addressed the issue by holding that it does not warrant a reversal of the trial court's judgment. I respectfully dissent from that determination and the decision to overrule Folsom's application for rehearing.
At trial, Folsom sought a preliminary and permanent injunction against Stagg Run's relocation of an easement that included Folsom's driveway to his property and the utilities servicing his property. As correctly stated by the main opinion:
"`To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala.1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998) [overruled on other grounds by Pryor v. Reno, 171 F.3d 1281 (11th Cir.1999)]. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390,] 395, 101 S.Ct. 1830[, 1834 (1981)].'"
42 So.3d at 723 (quoting TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), and citing Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala.2006)). Because the trial court's hearing was for the purpose of ruling only on the request for a preliminary injunction, Folsom was not required to establish with substantial evidence each of the elements of his claim in order to succeed at this stage of the litigation. I believe that Folsom established a reasonable likelihood of success on the merits of his claim and that the preliminary injunction should issue.
At trial, in his appellant's brief on original submission, and again in his application for rehearing, Folsom pointed out that the recorded instrument provided:
"At a later date, if a new and shorter road is built with the entrance coming off Indian Trail all property owners would be expected to use this road, but the cost of this road would be for the owner or owners of Lots W, Y, and Z.
"At all times there will be a road which will be open so the owners of Lots W, X, Y, and Z can reach their property."
As expressly stated in that instrument, Folsom's driveway could be relocated only if a "new and shorter road is built with the entrance coming off Indian Trail." Folsom argued that Stagg Run had not complied with the express language in the recorded instrument because, at the hearing before the trial court, it was undisputed that the proposed new driveway would not originate off Indian Trail but would instead originate off Deer Mountain Circle.
Alabama law is well settled that a trial court must look to the instrument creating an easement to determine the scope of an express easement. Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala.1988). In construing an instrument creating an easement to determine the intention of the parties, the plain meaning of the terms of that instrument must be given effect. See Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). I agree with Folsom that the plain *728 meaning of the terms of the recorded instrument requires that the entrance of any new easement come off Indian Trail; I also agree with Folsom that Stagg Run's proposed site for the relocated easement does not comply with that requirement. I, therefore, conclude that Folsom established a reasonable likelihood of success on the merits of his action to enjoin Stagg Run's proposed relocation of the easement. Thus, my analysis of the first element weighs in favor of a preliminary injunction.
I also conclude that Folsom established a substantial threat of irreparable injury if the preliminary injunction is not granted. According to the testimony of Melissa Cosby, a real-estate appraiser, Stagg Run planned to destroy Folsom's driveway before providing him an alternative and equivalent access to his property. Although Cosby indicated that Stagg Run would grade the old driveway each night so that Folsom would have some means of access to his property during the construction period, use of a dirt driveway for an extended period of time is hardly the same as the use of a concrete one.
Moreover, the location of the proposed new easement was not the only issue raised by Folsom. The testimony indicated that the parties had not reached an agreement as to the exact specifications of Stagg Run's proposed driveway and whether Stagg Run would agree to incur the added expense of replacing Folsom's three-phase power line to his property. Without a preliminary injunction, Stagg Run will relocate the driveway to the location it desires and to the specifications it sees fit and will install the utility lines it deems appropriate. Once the landscape and topography of the property is physically changed to accommodate Stagg Run's construction, it is unlikely that Folsom will be able to reverse those changes.
Further, as argued by Folsom in his original appellant's brief and in his application for rehearing, if the requested preliminary injunction is not granted, Folsom's right to access his property as authorized in the easement may be permanently blocked. In West Town Plaza Associates, Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993), the supreme court recognized that such a permanent obstruction was "clearly an injury or harm for which money damages are inadequate." 619 So.2d at 1296. The court stated:
"The Overlease and the Sublease granted Wal-Mart an easement in land, a property right, not merely a right to a number of parking spaces. The Blockbuster building was estimated to occupy an area equal to approximately 30 to 34 parking spaces. West Town Plaza's construction of the Blockbuster building permanently deprived Wal-Mart of part of its easement granted under the lease agreements. Such an obstruction of Wal-Mart's easement is clearly an injury or harm for which money damages are inadequate and for which the trial court has jurisdiction, in its sound discretion, to enjoin and order removed."
Id.
In this case, the recorded instrument granted Folsom the right to access his property via an easement coming off Indian Trail. Unless Stagg Run is enjoined from relocating the driveway and utilities to its proposed location, Folsom's right to access his property via Indian Trail will be permanently obstructed, an injury for which money damages will be inadequate.
That an easement gives rise to a protected property right was also recognized in Magna, Inc. v. Catranis, 512 So.2d 912 (Ala.1987). In that case, the Alabama Supreme Court stated:
"An easement is property, 2 Thompson on Real Property 3, § 315 (1980); 2 *729 American Law of Property 236, §§ 8, 10 (1952); and it comes within the constitutional provision that no person shall be deprived of his property without due process. Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9 (1917).
"The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate. Snider v. Alabama Power Co., 346 So.2d 946 (Ala.1977); Alabama Power Co. v. Martin, 341 So.2d 695 (Ala.1977). The fact that an obstruction to an easement is of a minor degree furnishes no standard for justification if the obstruction clearly interferes with the enjoyment of the easement. Brown v. Alabama Power Co., 275 Ala. 467, 471, 156 So.2d 153, 157 (1963).
"Magna and its licensees, invitees, tenants, successors, and assigns, have the non-exclusive right to use each square foot of the property on which it has an easement for ingress and egress and parking of vehicles. This is a property right. Our respect for property rights will not permit us to diminish or reduce Magna's rights simply because neither Magna nor its tenant needs all the property to which it has property rights. Certainly, our federal and state constitutions protect such rights and would prohibit judicial deprivation or diminution of such rights based solely upon a judicial determination of an owner's lack of need for such property. The implications of a contrary result would be frightening."
512 So.2d at 913-14.[4] As in Magna, Folsom has a property right in the easement granted to himin the form that it was granted to him. Simply because Stagg Run proposed to eventually offer Folsom access to his property via a different route and simply because Stagg Run believed the new access route would be superior to the old one does nothing to alter Folsom's right to enforce the property rights as they were granted to him. Until a new and shorter road is built coming off Indian Trail, or until sufficient legal justification is shown for noncompliance with that requirement, Folsom should not be involuntarily deprived of his property right. Therefore, my analysis of the second element weighs in favor of Folsom's requested injunction.
Further, the threatened injury to Folsom outweighs any harm threatened to Stagg Run by the requested injunction. The only injury Stagg Run alleged it would suffer if the requested injunction was issued was a financial loss. However, the evidence established that Stagg Run, with full knowledge that Folsom had not formally agreed to relocate the existing easement, entered into binding financial obligations in connection with the development. Such a voluntarily incurred "injury" cannot be held to outweigh Folsom's preexisting, constitutionally protected property rights. See, e.g., West Town Plaza, 619 So.2d at 1298 (recognizing that the landlord hurried to construct a new building that it knew interfered with the tenant's easement and property rights and, therefore, that the landlord's resulting financial loss should not be taken into consideration when weighing the equities of the parties to determine if trial court exceeded its discretion in ordering the landlord to remove the new building). Thus, I conclude that the injury threatened to Folsom far outweighs that threatened to Stagg Run; as a result, my analysis of the *730 third element weighs in favor of the requested injunction.
Finally, I find no recognizable public interest in an undeveloped residential subdivision. Thus, my analysis of the fourth element weighs in favor of issuing the requested injunction.
"A trial court has wide discretion in determining whether to grant a preliminary injunction, and its decree will not be disturbed on appeal unless an abuse of that discretion is shown. Nevertheless, a trial court may be found to have abused its discretion where the decree violates some established rule of law or principle of equity or shows a clear and palpable error which results in manifest injustice."
Chunchula Energy Corp. v. Ciba-Geigy Corp., 503 So.2d 1211, 1216 (Ala.1987). Because Folsom established all the elements necessary for issuance of a preliminary injunction and because Stagg Run did not establish any legally recognized justification for its nonperformance of the condition stated in the recorded instrument, I conclude that the trial court exceeded its discretion in denying the requested injunction.
The main opinion concludes that the trial court considered the stated condition in the recorded instrument but found the condition "no longer applicable" because of the steep topography of Indian Trail and because the land lying between Indian Trail and Deer Mountain Circle was owned by a third party. In so concluding, the main opinion relies on the following language from the trial court's judgment:
"Although executed in 1984, the document clearly contemplates the future re-location of the driveway. This particular provision contained several conditions, some of which are no longer applicable. However, it is the court's opinion and finding that the overall intent of the parties to that document included the re-location of the driveway and the parties herein are successors in interest to the parties in that document."
Whether the main opinion interprets that "no longer applicable" language as excusing Stagg Run's compliance with the condition stated in the recorded instrument or as permitting its noncompliance on the basis of impossibility of performance is unclear. However, I find neither to be justified.
The evidence before the trial court established that Deer Mountain Circle was located one-half mile from Indian Trail and that both Indian Trail and Deer Mountain Circle existed at the time the 1984 easement was created. The grantor of the easement, Robert Burr, Sr., owned property adjacent to Folsom's property, and, therefore, it is reasonable to infer that he was well aware of the topography of the land in that vicinity in 1984.
Further, the only testimony before the trial court addressing the topography of the land surrounding Indian Trail was given by Melissa Cosby and Homer Dobbs, Sr., the developer and a member of Stagg Run. When asked about the steepness of the topography of the Indian Trail area, Cosby testified that she did not know if it would be difficult to build a road off of Indian Trail and that she had never examined Indian Trail in that context. She specifically declined to characterize the topography of Indian Trail as "difficult."
Dobbs testified that he could not "take a road or develop a road from Indian Trail up to ... [Stagg Run's] property" because he would have to cross someone else's property. He also added that the "topography down there on the north side of this is so severe that I doubt it would be practical to try to put a road through there." However, he admitted he was not *731 an expert and that he had not consulted with anyone to determine whether a road could be built from Indian Trail. Further, the evidence before the trial court did not establish that the topography in the area had changed at all since the drafting of the 1984 easement.
Further, Stagg Run purchased the land surrounding Folsom's property with actual or constructive knowledge of the obligation created by the recorded instrument. Additionally, due to the lack of evidence as to the date the third party purchased its property, it appears that Stagg Run purchased its property with actual or constructive notice that a third party privately owned the land over which Folsom's driveway would have to be relocated in order to comply with the condition stated in the recorded instrument. However, Stagg Run did not in any way attempt to comply with the condition in the recorded instrument.
Although an exhaustive review of cases addressing excused performance and impossibility of performance would be impracticable, this case does not fit within either of those legal theories. See, e.g., 17A Am.Jur.2d Contracts § 644-698 (2004) (discussing excuses for nonperformance of a contract). Applying those sections of Am.Jur.2d to the evidence in this case, it is appears there has been no change in the conditions existing at the time the contract (the recorded instrument) was made, see § 644; there was no evidence presented to constitute excuse or fraud discovered after a breach of the contract (the recorded instrument), see § 645; there has been no frustration of the principal purpose for which the contract at issue (the recorded instrument) was made, see § 651; and, as recognized in § 647, difficulty, hardship, or financial loss is an insufficient basis to release a party from a binding contract "The inconvenience or the cost of compliance, even if resulting in hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do something that is possible and lawful, since the courts cannot alter contract obligations because they work a hardship." For these reasons, I find no justification for excusing Stagg Run from compliance with the stated condition in the recorded instrument.
I also conclude that the language of the trial court's order should not and cannot be construed as a finding of impossibility of performance by Stagg Run. First, Stagg Run failed to present sufficient evidence to support such a finding; the only evidence relevant to building a road off of Indian Trail was from Dobbs, who testified that it would not be practicalnot impossibleto relocate the easement off of Indian Trail.
Second, even if this court is inclined to conclude that financial impracticability is equivalent to impossibility, the evidence in this case was insufficient to reach that conclusion on a motion for a preliminary injunction. Stagg Run presented no expert testimony, no financial data, and nothing other than the self-serving testimony of Dobbs, who admitted that he never even investigated the possibility of placing the driveway off of Indian Trail. Stagg Run did not establish that it could not comply with the legally binding condition in the recorded instrument.
Finally, the main opinion concludes that the trial court was authorized, in its discretion, to "balance the equities" between the parties in deciding whether to grant the injunction. I recognize the discretion granted to trial courts to balance the equities among the parties, all other factors being equal. However, in this case, it cannot be disputed that Folsom has a legally protected right to his easement, that the recorded instrument allows relocation of his driveway only if the new driveway comes off of Indian Trail, and that the *732 irreparable harm to Folsom outweighs the harm to Stagg Run. Additionally, Stagg Run undertook the development with full knowledge of Folsom's objection to the relocation of his driveway. Further, it appears that Stagg Run purchased its property with actual or constructive knowledge that a third party owned the property over which it would be required to relocate Folsom's driveway. However, Stagg Run proceeded with its plan to develop the subdivision anyway. I do not find that the equities are in Stagg Run's favor. For these reasons, I respectfully dissent.
BRYAN, J., concurs.
NOTES
[1] Dobbs and Lynn are the only members of Stagg Run.
[2] Certain evidentiary exhibits indicate that at some time between purchasing Lot X and filing this action, Folsom also purchased Lot Y.
[3] The record reflects that Stagg Run expected Folsom's property would experience occasional power outages and that only a dirt track would provide access to Lots W, X, Y, and Z during the construction process.
[4] During the hearing on Folsom's motion for a preliminary injunction, the trial court indicated its disagreement with the language and result of Magna, Inc. v. Catranis, supra.