619 So.2d 1290 (1993)
WEST TOWN PLAZA ASSOCIATES, LTD., et al.
v.
WAL-MART STORES, INC.
1910508.
Supreme Court of Alabama.
January 15, 1993.
Rehearing Denied April 9, 1993.
*1291 Jesse P. Evans III and Rachel J. Moore of Najjar Denaburg, P.C., Birmingham, for appellants.
Steven A. Benefield and Deborah Alley Smith of Rives & Peterson, Birmingham, for appellee.
ALMON, Justice.
This is an appeal from injunctive relief granted to Wal-Mart Stores, Inc., requiring West Town Plaza Associates, Ltd.,[1] to remove a building constructed in the parking lot of the West Town Plaza Shopping Center. *1292 West Town Plaza raises three issues: (1) Whether Wal-Mart, as sublessee, has standing to enforce against the assignee of the lessor an easement granted under the original lease and subsequently incorporated by reference into the sublease agreement; (2) Whether the trial court erred when it construed the lease and sublease agreements to grant Wal-Mart an easement for automobile parking in the parking lot, rather than a right to a minimum number of parking spaces; and (3) Whether the trial court plainly and palpably erred in ordering the removal of a structure located in a parking lot over which Wal-Mart held an easement.
West Town Plaza Associates is the owner of a shopping center in which Wal-Mart, as a sublessee, is a tenant. The original owner and builder of the shopping center executed a lease to F.W. Woolworth Company for space to operate a retail department store (the "Overlease"). Woolworth later subleased the building to Wal-Mart (by a document we will call the "Sublease"). The original owners of the shopping center then transferred their reversionary interest to West Town Plaza, and Woolworth assigned its interest as sublessor to Pine Properties, Inc.
The Overlease between the original owners and Woolworth granted to the lessee Woolworth an easement for automobile parking in the parking lot of the shopping center. Article 2 of the Overlease defined the leased premises as follows:
"Art. 2. The Landlord does demise and let unto the Tenant, and the Tenant does lease and take from the Landlord, for the term and upon the terms and conditions set forth in this lease, the premises now known as West Town Plaza,
"[Address] On U. S. Highway 11, Bessemer, Alabama
"and more particularly described in Schedule `A' and drawing attached hereto and made a part hereof, together with alley rights, if any, easements, rights and appurtenances in connection therewith or thereunto belonging."
Articles 27 and 28 of the Overlease contain the language whose meaning the litigants now dispute. In Article 27 the original landlord agreed to complete construction of, among other things, "Common Facilities":
"Conditions of Delivery
"Art. 27. (Section IConstruction). The Landlord agrees at the Landlord's expense, to commence, within 180 days after delivery by the Tenant to the Landlord of an executed copy of this lease, and thereafter to complete the construction of such of the following as are not already in existence: (a) retail store building or buildings upon land described as Entire Premises in Schedule `A' attached thereto, said building or buildings to have not less than 620 lineal feet of frontage and 118,161 square feet of ground floor space (including the demised premises) and to be situated within the area shown as Building Area on the drawing attached to said Schedule `A'; (b) building and appurtenances on the demised premises in the location referred to in Schedule `A' hereof, in accordance with plans and specifications prepared by the Landlord and bearing the written approval of the Tenant's Division Construction Director; and (c) certain Common Facilities in accordance with plans and specifications prepared by the Landlord and bearing the written approval of the Tenant's aforesaid Construction Director, consisting of (i) adequate sidewalks, including a sidewalk not less than 13 feet wide abutting each of the pedestrian entrances of the demised premises, (ii) a Service Drive not less than 20 feet wide connecting the Tenant's freight receiving facilities with a public street or highway, (iii) Parking Area or Areas to accommodate not less than 900 automobiles and to be located generally between the Building Area and U.S. Highway 11 and (iv) entrances and exits from and to public streets or highways as shown on said drawing."
(Emphasis added.)
Article 28 specifically grants to the tenant a common or non-exclusive easement to use all "aforementioned Common Facilities, *1293 including but not limiting the same to ... the use for automobile parking, of the areas designated as Parking Area":
"Use of Common Facilities
"Art. 28. The Landlord hereby grants to the Tenant, its customers, employees and visitors an easement throughout the term hereof to use, in common with others entitled to similar use, all of the aforementioned Common Facilities and in addition thereto any similar future facilities, including but not limiting the same to the use of all the Streets, Service Drives and Sidewalks for ingress and egress to and from the demised premises and the public streets or highways shown on the aforesaid drawing, and the use for automobile parking, of the areas designated as Parking Area; all of said Common Facilities being situated upon land described as Entire Premises in the aforementioned Schedule `A' and drawing."
Each of these provisions and various others in the Overlease refer to the "Schedule `A'" drawing to define terms. This drawing describes, by metes and bounds, the locations of the "Building Area," the demised premises under the Overlease, and the sites of various future buildings. The drawing also describes the general location of the shopping center's parking lot, which is designated as "Parking Area min. 950 spaces."
The sublease executed by Woolworth and Wal-Mart incorporated by reference Article 28 of the lease, but excluded, inter alia, Article 27.
In July 1991, West Town Plaza, the assignee of the original lessor, notified Wal-Mart, the sublessee, that it planned to construct a Blockbuster video store near one of the two entrances to the shopping center's parking lot. While the record suggests some communication between the parties regarding construction of the Blockbuster building, West Town Plaza did not seek Wal-Mart's consent. As part of its proposed site plan for the Blockbuster building, West Town Plaza promised to increase the number of parking spaces from 774 to 900 by restriping them. On July 19, 1991, the City of Bessemer issued West Town Plaza a building permit. On July 22, 1991, Wal-Mart appealed to the City of Bessemer Board of Adjustment from the issuance of building permit. On August 2, 1991, pending Wal-Mart's appeal, West Town Plaza began excavation of the site. In response, Wal-Mart applied for a preliminary injunction on August 6, 1991, alleging that West Town Plaza's construction of the building in the parking lot obstructed its easement under the lease agreements. Wal-Mart sought to enjoin construction of the building and to order West Town Plaza to restore the area of the parking lot to its original condition. It was estimated that the Blockbuster building occupied between 30 and 34 parking spaces. The parties stipulated that the building was being constructed in an area of the shopping center's parking lot that had been used for automobile parking. It is undisputed that the building under construction was situated in the area labelled "Parking Area" on the Schedule A diagram. From the record and briefs on appeal, it also appears that by the time the trial court entered its judgment on October 16, 1991, West Town Plaza had substantially completed construction of the Blockbuster building.
After conducting an expedited hearing to consider both preliminary and permanent injunctive relief pursuant to Rule 65(a)(2), Ala.R.Civ.P., the trial judge issued an opinion and entered a judgment for Wal-Mart, holding that West Town Plaza's construction of the building obstructed Wal-Mart's nonexclusive easement over the parking area. The trial court construed the Overlease and the Sublease to grant Wal-Mart an easement over a certain area of property, rather than a right to use a stipulated number of parking spaces, as West Town Plaza had argued. Relying on this Court's opinion in Magna, Inc. v. Catranis, 512 So.2d 912 (Ala.1987), the trial court rejected West Town Plaza's offer to restripe the parking lot as a remedial alternative to removal of the Blockbuster building:
"[West Town Plaza has] presented evidence through experts that by restriping the parking area of Shopping Center they can increase the number of parking *1294 spaces provided to a number greater than the number striped before the Blockbuster Building was constructed.... Because Wal-Mart has an easement in the parking area of the Shopping Center for the exclusive purpose of automobile parking, it is entitled to use every square foot of the parking area for that purpose in common with other tenants and their customers and employees. Simply because the Blockbuster Building would not reduce the number of parking spaces if some changes were made to the striping of the parking lot does not reduce or diminish Wal-Mart's right to use the ground on which the building rests for automobile parking."
The trial court permanently enjoined West Town Plaza from obstructing Wal-Mart's easement in the "Parking Area" for automobile parking and ordered West Town Plaza to remove the completed Blockbuster building.
West Town Plaza's first argument is that, as a sublessee, Wal-Mart has no standing to enforce against it any provision of the lease or sublease because, it says, no privity of contract or estate exists between the two parties. In the absence of such privity, West Town Plaza contends, Wal-Mart has a right of action under the sublease only against Pine Properties, Inc., the assignee of the sublessor, Woolworth. Wal-Mart argues that an easement is an interest in property and is enforceable against the whole world and that no privity of any type is necessary to enforce or protect its easement under the lease agreements. After careful review of the record, we find that West Town Plaza did not raise this issue with the trial court and therefore has not properly preserved this issue for review. This Court will not reverse the trial court's judgment on a ground raised for the first time on appeal. Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala. 1988); Costarides v. Miller, 374 So.2d 1335 (Ala.1979).
West Town Plaza's second argument is that the trial court misconstrued the Overlease and Sublease agreements to grant a common easement over an area of property, i.e., the shopping center's parking lot, rather than a right to a "minimum number of spaces within a non-specific area." West Town Plaza asserts that the provisions of the Overlease define the easement granted under Article 28 of the Sublease. West Town Plaza argues that the term "Parking Area or Areas" under Article 28 of the Overlease is defined, by its reference to Article 27, as a minimum number of parking spaces in a general location indicated on the Schedule A drawing. According to West Town Plaza, the terms "Common Facilities" and "Parking Area or Areas" are capitalized for the first time in Article 27; therefore, it says, their use later in Article 28 should be given the meaning placed on them in Article 27. Because Article 27 defines "Parking Area or Areas" with reference to a minimum number of parking spaces in a generally described area, West Town Plaza argues that Article 28 grants only a nonexclusive right to a minimum number of parking spaces, not a right of use over an area of property.
The general rule is that this Court will "construe [a] lease according to the parties' intention as gathered from the whole instrument, and, if the language is not clear, the circumstances attending its execution and the subsequent acts of the parties." Irwin v. Baggett, 231 Ala. 324, 326, 164 So. 745, 746 (1935). "It is well settled that a court in seeking to ascertain the intention of the parties in construing a contract, will consider the contract as a whole, although the immediate object of the inquiry is the meaning of a particular clause. Further, a contract must be construed as a whole and, whenever possible, effect must be given to all its parts." Land Title Co. of Alabama v. State ex rel. Porter, 292 Ala. 691, 698, 299 So.2d 289, 295 (1974) (citations omitted). "Furthermore in the absence of ambiguity the court cannot interpret the contract but must take it as it is written." Darling Shop of Birmingham, Inc. v. Nelson Realty Co., 255 Ala. 586, 591, 52 So.2d 211, 215 (1951); see also Byrd Companies, Inc. v. Birmingham Trust Nat'l Bank, 482 So.2d 247, 251 (Ala.1985).
*1295 We hold that Article 28 of the Overlease, incorporated into the Sublease, is unambiguous and grants an easement over the parking area generally described in the Schedule A drawing. See C.T. Foster, Annot., Construction and Operation of Parking-Space Provision in Shopping-Center Lease, 56 A.L.R.3d 596 (1974). Contrary to West Town Plaza's argument, the language of Article 28 is definitional with respect to the extent and location of the easement it grants. Although Article 28 grants an easement in "aforementioned Common Facilities," and thereby implicitly makes reference to Article 27, it then proceeds to define the term "Common Facilities," in part, as "including but not limiting the same to the use of all the Streets, Service Drives and Sidewalks for ingress and egress to and from the demised premises and the public streets or highways shown on the aforesaid drawing, and the use for automobile parking, of the areas designated as Parking Area." While the capitalized term "Common Facilities" implicitly refers to Article 27, where it appears for the first time in the Overlease, Article 28 explicitly refers to the Schedule A drawing to define "Common Facilities," not to Article 27. The conclusion that the Schedule A drawing, and not Article 27, operates to define the extent of the easement is supported further by the fact that Articles 2, 27, and 28 all refer to the Schedule A drawing to define rights and obligations granted under those articles.
The plain language of Article 27 does not indicate that it serves any definitional function for Article 28. While Article 27 and Article 28 both concern "Common Facilities," they create completely different rights and obligations with regard to them. Entitled "Conditions of Delivery," Article 27 describes the lessor's obligation to complete construction of, inter alia, "Common Facilities." Thus, the language "Parking Area or Areas to accommodate not less than 900 spaces" defines the lessor's obligation to finish construction of the shopping center's parking lot. Nothing in Article 27 shows that this provision also defines the easement conveyed by the lessor under Article 28. That Article 27 only defines the lessor's obligation to the lessee under the Overlease to finish building the parking lot and does not serve to define the property rights granted under Article 28 is also demonstrated by the explicit exclusion of Article 27 from the Sublease.
The plain meaning of key terms in Article 28 also indicates that the Overlease grants an easement over an area of real property, not just a right to a minimum number of parking spaces. Article 28 conveys an "easement" over "areas designated as Parking Area." The term "easement" connotes an incorporeal right "imposed upon corporeal property." Louis Pizitz Dry Goods Co. v. Penney, 241 Ala. 602, 605, 4 So.2d 167, 169 (1941). "An easement, although an incorporeal right,... is yet properly denominated an interest in land, ... and the expression `estate or interest in lands' is broad enough to include such rights; for an easement must be an interest in or over the soil." Oates v. Town of Headland, 154 Ala. 503, 505, 45 So. 910, 911 (1908) (quoting 14 Cyc. 1139, nn. 6 and 7). The language of Article 28 does not suggest that the parties, sophisticated and well-advised businessmen, intended any meaning other than the ordinary legal one. The word "areas" also indicates a definite, physical space, whose location is defined by reference to the Schedule A drawing showing its general location.
In its third argument, West Town Plaza contends that the trial court committed plain and palpable error in ordering removal of the Blockbuster building. West Town Plaza asserts that Wal-Mart will suffer no irreparable injury if the building remains, because, under the site plan, West Town Plaza has promised to increase the number of parking spaces in the shopping center from 774 to 900 by restriping them. West Town Plaza contends also that the Blockbuster video store will actually benefit Wal-Mart by attracting more customers to the shopping center.
West Town Plaza also argues that the trial court abused its discretion in failing to consider the relative hardship to West Town Plaza in ordering it tear down a *1296 completed building. Citing Alabama Power Co. v. Drummond, 559 So.2d 158 (Ala. 1990), West Town Plaza urges this Court to apply the "comparative injury doctrine" and consider the financial hardship and the economic waste that would result from ordering removal of the Blockbuster building. West Town Plaza asks the Court to allow it to keep the Blockbuster building and provide alternative parking for Wal-Mart.
Citing Magna, Inc. v. Catranis, 512 So.2d 912 (Ala.1987), Alabama Power Co. v. Ray, 260 Ala. 506, 71 So.2d 91 (1954), and Sellers v. Valenzuela, 249 Ala. 627, 32 So.2d 517 (1947), Wal-Mart asserts that, as a matter of law, West Town Plaza's continuous and permanent obstruction of its easement constitutes an irreparable injury for which money damages are inadequate. In addition, Wal-Mart argues that the trial court did not err in failing to apply the "comparative injury doctrine" because, Wal-Mart argues, its application to a permanent obstruction of an easement is inappropriate and because West Town Plaza intentionally and knowingly violated the easement and hurried to complete construction of the Blockbuster building in order to make its existence a fait accompli.
The issuance of injunctive relief pursuant to Rule 65, Ala.R.Civ.P., is within the sound discretion of the trial court. Holland v. City of Alabaster, 572 So.2d 431 (Ala.1990); Alabama Power Co. v. Drummond, 559 So.2d 158, 161 (Ala.1990); Hood v. Neil, 502 So.2d 749 (Ala.1987). To support a reversal, West Town Plaza has the burden to show that the trial court abused its discretion, i.e., that it plainly and palpably erred when it granted Wal-Mart injunctive relief. Hood, 502 So.2d at 750; see also Drummond, 559 So.2d at 161; Reed v. City of Montgomery, 341 So.2d 926 (Ala.1976). The trial court's exercise of its discretion is subject to reversal when it violates some principle of equity or is based on a misapprehension of the controlling law. Public Systems, Inc. v. Towry, 587 So.2d 969, 971 (Ala.1991); Martin v. First Federal Sav. & Loan Ass'n of Andalusia, 559 So.2d 1075, 1079 (Ala.1990); Powell v. Phenix Federal Savings & Loan Assoc., 434 So.2d 247, 251 (Ala.1983).
"The owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate, and a court of equity has jurisdiction to enjoin the obstruction of private easements and to require the removal of such obstructions." Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153 (1963) (citations omitted); see also Potts v. Water Works Bd., City of Aliceville, 267 Ala. 46, 100 So.2d 16 (1958); Alabama Power Co. v. Ray, 260 Ala. 506, 71 So.2d 91 (1954).
The Overlease and the Sublease granted Wal-Mart an easement in land, a property right, not merely a right to a number of parking spaces. The Blockbuster building was estimated to occupy an area equal to approximately 30 to 34 parking spaces. West Town Plaza's construction of the Blockbuster building permanently deprived Wal-Mart of part of its easement granted under the lease agreements. Such an obstruction of Wal-Mart's easement is clearly an injury or harm for which money damages are inadequate and for which the trial court has jurisdiction, in its sound discretion, to enjoin and order removed. See Pacemaker Food Stores, Inc. v. Seventh Mont Corp., 117 Ill.App.3d 636, 72 Ill.Dec. 931, 453 N.E.2d 806 (1983); Mutual of Omaha Life Insurance Co. v. Executive Plaza, Inc., 99 Ill.App.3d 190, 54 Ill.Dec. 638, 425 N.E.2d 503 (1981); Walgreen Co. v. American Nat'l Bank & Trust Co. of Chicago, 4 Ill.App.3d 549, 281 N.E.2d 462 (1972).
West Town Plaza's last contention is that the trial court abused its discretion in failing to apply the "comparative injury doctrine." While the trial court indicated that it had considered the remedial alternative, proposed by West Town Plaza, of restriping the parking lot, neither the record nor the trial court's long opinion indicates that the trial court applied this doctrine or specifically balanced the relative burdens and benefits of the parties. Considering the length and thoroughness of the trial court's opinion, the absence of any discussion of the comparative injury doctrine *1297 leads us to conclude that the court did not consider that doctrine as such.
This Court has long recognized the applicability of the comparative injury doctrine, principally in cases involving actions alleging private nuisance or continuing trespass. E.g. Daniels v. Chapuis, 344 So.2d 500, 503 (Ala.1977); Pritchett v. Wade, 261 Ala. 156, 162, 73 So.2d 533, 538 (1954); Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 92, 124 So. 82, 84 (1929). In Daniels v. Chapuis, at 503, this Court formally adopted the doctrine as set forth in 42 Am.Jur.2d Injunctions, § 56 at 799 (1969):
"`Injunctions are never granted when they are against good conscience, or productive of hardship, oppression, injustice, or public or private mischief, and it may be said to be the duty of the court whose jurisdiction is invoked to secure injunctive relief, when considering the application, to consider and weigh the relative convenience and inconvenience and the comparative injuries to the parties and to the public which would result from the granting or refusal of the injunction sought.'"
See also Restatement (Second) of Torts § 941 (1977). The Court in Daniels noted that the "comparative injury doctrine" was "but a species of the balancing of the equities principle," 344 So.2d at 503, which has been routinely applied in a variety of contexts in cases involving applications for temporary and preliminary injunctions, e.g., Martin v. First Federal Sav. & Loan Ass'n of Andalusia, 559 So.2d 1075 (Ala. 1990); Triple J Cattle, Inc. v. Chambers, 551 So.2d 280 (Ala.1989).
In Alabama Power Co. v. Drummond, 559 So.2d 158 (Ala.1990), this Court held that a trial court did not abuse its discretion when it declined to order the removal of a structure permanently obstructing a flood easement. In Drummond, the defendant built an addition to her house that encroached upon Alabama Power Company's flood easement. Balancing the relative equities of the parties, the trial court found that although the defendant was aware of the flood easement, the encroachment was unintentional and "infinitesimal" and that removal of a part of the addition would substantially impair the value of the whole. In lieu of ordering the structure removed, the trial court ordered the defendant to substitute a compensating amount of flood-easement area by recontouring the land. Upholding the trial court's judgment, this Court stated:
"[The] broad power to fashion judgments applies in the context of an injunction action, and the trial court may refuse injunctive relief in its attempt to do equity in a given case. A court may `balance the equities' in deciding whether to grant an injunction, and may specifically consider the `convenience' of the requested relief to both the plaintiff and the defendant."
Drummond, 559 So.2d at 162 (citing H. Joyce, Joyce on Injunctions § 20, at 41 (1909)); see also Alonzo v. Sanford, 465 So.2d 1131, 1135 (Ala.Civ.App.1984).
The decision whether to apply the comparative injury doctrine in appropriate cases is within the sound discretion of the trial court and is subject to reversal only for plain and palpable error or manifest injustice. In the particular circumstances of this case, the trial court did not abuse its discretion in not applying the comparative injury doctrine but ordering the removal of the completed Blockbuster building. Unlike the obstruction in Drummond, the obstruction of Wal-Mart's easement was not "infinitesimal"; the Blockbuster building occupied an area equal to approximately 30 to 34 parking spaces. Moreover, the building was constructed beside the entrance to the shopping center and in front of Wal-Mart's building. Also, while the trial court did not in its opinion apply the comparative injury analysis, it did properly consider West Town Plaza's remedial alternative to removing the Blockbuster building, i.e., restriping the parking lot. Thus, while apparently not considering the comparative injury doctrine expressly, the trial court did engage in a balancing of the equities.
In considering the particular facts and the relative equities in this case and those in the Drummond case, we hold that Wal-Mart's interest in maintaining a certain *1298 amount of space in a specific location, exclusively for the purpose of parking, is distinguishable from Alabama Power's interest in maintaining its flood easement. While both Wal-Mart and Alabama Power have the right to use every square foot of the land over which their respective easements extend, the factual circumstances and equitable considerations in each case are different. In Drummond, the court declined to order removal of the encroaching structure because the purpose of the flood easement was equally well served by recontouring the land in another location to compensate for the loss caused by the encroachment. The specific land encroached upon was not indispensable to the purpose of the easement. Thus, in light of the cost of removing the encroachment and given the "infinitesimal" extent of the obstruction, it was equitable not to order part of the structure removed. Such an approach in Wal-Mart's case, e.g., restriping, however, would be inequitable, because here the specific land encroached upon by the Blockbuster building is uniquely essential to the purpose of the parking easement in the lot: accommodating customers, making access to its store convenient, and maintaining visibility from public throughfares. Thus, the particular circumstances and equities of Drummond make it distinguishable from this case and highlight the appropriateness of ordering the removal of the Blockbuster building.
While the record does not directly show and the trial court did not expressly find that West Town Plaza intentionally obstructed Wal-Mart's easement, the record does indicate that West Town Plaza became aware of Wal-Mart's opposition to the building before construction began. Notwithstanding Wal-Mart's prompt appeal of West Town Plaza's building permit and its equally prompt filing of an application for preliminary and permanent injunction when faced with continued construction, West Town Plaza proceeded to complete the building. In the trial court and on appeal, West Town Plaza has argued that it acted on a good faith belief that under the lease agreements Wal-Mart's consent to the construction was unnecessary. However, under the circumstances, it would seem inequitable and unjust to reverse the trial court's judgment for failing to expressly balance the burden of removing a completed building with the value of 30 to 34 parking spaces, when West Town Plaza seems to have rushed to finish its construction notwithstanding the existence of a dispute over the parties' rights under the leases and notwithstanding Wal-Mart's determined opposition.
Because the Blockbuster building erected by West Town Plaza permanently obstructs an easement for parking granted in favor of Wal-Mart under the Overlease and the Sublease agreements and because the trial court did not plainly and palpably err in ordering the removal of the building, we affirm.[*]
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice, concurring in the result.
I concur in the result based on my dissent in Alabama Power Co. v. Drummond, 559 So.2d 158, 162-63 (Ala.1990).
NOTES
[1] Two other defendants, Pine Properties, Inc., and Blockbuster, Inc., are included in the judgment and the notice of appeal, but West Town Plaza is the party principally prosecuting this appeal.
[*] The Justices who did not sit at oral argument have listened to the tape recording.