MOORE, Judge,
dissenting.
I originally concurred in this court’s opinion issued in this case on May 9, 2008. In his application for rehearing, Clint Folsom asserts, among other things, that this court failed to address his argument that Stagg Run Development, L.L.C., was not entitled to relocate the easement at issue because the conditions set forth in the recorded instrument authorizing a relocation had not been met. Folsom is correct; this court’s original opinion did not ad *727 dress that issue. In the opinion issued today, the court has addressed the issue by holding that it does not warrant a reversal of the trial court’s judgment. I respectfully dissent from that determination and the decision to overrule Folsom’s application for rehearing.
At trial, Folsom sought a preliminary and permanent injunction against Stagg Run’s relocation of an easement that included Folsom’s driveway to his property and the utilities servicing his property. As correctly stated by the main opinion:
“ ‘To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala.1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998) [overruled on other grounds by Pryor v. Reno, 171 F.3d 1281 (11th Cir.1999) ]. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390,] 395, 101 S.Ct. 1830[, 1834 (1981) ].’ ”
42 So.3d at 723 (quoting TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999), and citing Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 271 (Ala.2006)). Because the trial court’s hearing was for the purpose of ruling only on the request for a preliminary injunction, Folsom was not required to establish with substantial evidence each of the elements of his claim in order to succeed at this stage of the litigation. I believe that Folsom established a reasonable likelihood of success on the merits of his claim and that the preliminary injunction should issue.
At trial, in his appellant’s brief on original submission, and again in his application for rehearing, Folsom pointed out that the recorded instrument provided:
“At a later date, if a new and shorter road is built with the entrance coming off Indian Trail all property owners would be expected to use this road, but the cost of this road would be for the owner or owners of Lots W, Y, and Z.
“At all times there will be a road which will be open so the owners of Lots W, X, Y, and Z can reach their property.”
As expressly stated in that instrument, Folsom’s driveway could be relocated only if a “new and shorter road is built with the entrance coming off Indian Trail.” Folsom argued that Stagg Run had not complied with the express language in the recorded instrument because, at the hearing before the trial court, it was undisputed that the proposed new driveway would not originate off Indian Trail but would instead originate off Deer Mountain Circle.
Alabama law is well settled that a trial court must look to the instrument creating an easement to determine the scope of an express easement. Kerrigan v. Sherrer, 535 So.2d 74, 75 (Ala.1988). In construing an instrument creating an easement to determine the intention of the parties, the plain meaning of the terms of that instrument must be given effect. See Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). I agree with Folsom that the plain *728 meaning of the terms of the recorded instrument requires that the entrance of any new easement come off Indian Trail; I also agree with Folsom that Stagg Run’s proposed site for the relocated easement does not comply with that requirement. I, therefore, conclude that Folsom established a reasonable likelihood of success on the merits of his action to enjoin Stagg Run’s proposed relocation of the easement. Thus, my analysis of the first element weighs in favor of a preliminary injunction.
I also conclude that Folsom established a substantial threat of irreparable injury if the preliminary injunction is not granted. According to the testimony of Melissa Cosby, a real-estate appraiser, Stagg Run planned to destroy Folsom’s driveway before providing him an alternative and equivalent access to his property. Although Cosby indicated that Stagg Run would grade the old driveway each night so that Folsom would have some means of access to his property during the construction period, use of a dirt driveway for an extended period of time is hardly the same as the use of a concrete one.
Moreover, the location of the proposed new easement was not the only issue raised by Folsom. The testimony indicated that the parties had not reached an agreement as to the exact specifications of Stagg Run’s proposed driveway and whether Stagg Run would agree to incur the added expense of replacing Folsom’s three-phase power line to his property. Without a preliminary injunction, Stagg Run will relocate the driveway to the location it desires and to the specifications it sees fit and will install the utility lines it deems appropriate. Once the landscape and topography of the property is physically changed to accommodate Stagg Run’s construction, it is unlikely that Folsom will be able to reverse those changes.
Further, as argued by Folsom in his original appellant’s brief and in his application for rehearing, if the requested preliminary injunction is not granted, Folsom’s right to access his property as authorized in the easement may be permanently blocked. In West Town Plaza Associates, Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala.1993), the supreme court recognized that such a permanent obstruction was “clearly an injury or harm for which money damages are inadequate.” 619 So.2d at 1296. The court stated:
“The Overlease and the Sublease granted Wal-Mart an easement in land, a property right, not merely a right to a number of parking spaces. The Blockbuster building was estimated to occupy an area equal to approximately 80 to 34 parking spaces. West Town Plaza’s construction of the Blockbuster building permanently deprived Wal-Mart of part of its easement granted under the lease agreements. Such an obstruction of Wal-Mart’s easement is clearly an injury or harm for which money damages are inadequate and for which the trial court has jurisdiction, in its sound discretion, to enjoin and order removed.”

Id.

In this case, the recorded instrument granted Folsom the right to access his property via an easement coming off Indian Trail. Unless Stagg Run is enjoined from relocating the driveway and utilities to its proposed location, Folsom’s right to access his property via Indian Trail will be permanently obstructed, an injury for which money damages will be inadequate.
That an easement gives rise to a protected property right was also recognized in Magna, Inc. v. Catranis, 512 So.2d 912 (Ala.1987). In that case, the Alabama Supreme Court stated:
“An easement is property, 2 Thompson on Real Property 3, § 315 (1980); 2 *729 American Law of Property 236, §§ 8,10 (1952); and it comes within the constitutional provision that no person shall be deprived of his property without due process. Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9 (1917).
“The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate. Snider v. Alabama Power Co., 346 So.2d 946 (Ala.1977); Alabama Power Co. v. Martin, 341 So.2d 695 (Ala.1977). The fact that an obstruction to an easement is of a minor degree furnishes no standard for justification if the obstruction clearly interferes with the enjoyment of the easement. Brown v. Alabama Power Co., 275 Ala. 467, 471, 156 So.2d 153, 157 (1963).
“Magna and its licensees, invitees, tenants, successors, and assigns, have the non-exclusive right to use each square foot of the property on which it has an easement for ingress and egress and parking of vehicles. This is a property right Our respect for property rights will not permit us to diminish or reduce Magna’s rights simply because neither Magna nor its tenant needs all the property to which it has property rights. Certainly, our federal and state constitutions protect such rights and would prohibit judicial deprivation or diminution of such rights based solely upon a judicial determination of an owner’s lack of need for such property. The implications of a contrary result would be frightening.”
512 So.2d at 913-14.[4] As in Magna, Folsom has a property right in the easement granted to him — in the form that it was granted to him. Simply because Stagg Run proposed to eventually offer Folsom access to his property via a different route and simply because Stagg Run believed the new access route would be superior to the old one does nothing to alter Folsom’s right to enforce the property rights as they were granted to him. Until a new and shorter road is built coming off Indian Trail, or until sufficient legal justification is shown for noncompliance with that requirement, Folsom should not be involuntarily deprived of his property right. Therefore, my analysis of the second element weighs in favor of Folsom’s requested injunction.
Further, the threatened injury to Folsom outweighs any harm threatened to Stagg Run by the requested injunction. The only injury Stagg Run alleged it would suffer if the requested injunction was issued was a financial loss. However, the evidence established that Stagg Run, with full knowledge that Folsom had not formally agreed to relocate the existing easement, entered into binding financial obligations in connection with the development. Such a voluntarily incurred “injury” cannot be held to outweigh Folsom’s preexisting, constitutionally protected property rights. See, e.g., West Town Plaza, 619 So.2d at 1298 (recognizing that the landlord hurried to construct a new building that it knew interfered with the tenant’s easement and property rights and, therefore, that the landlord’s resulting financial loss should not be taken into consideration when weighing the equities of the parties to determine if trial court exceeded its discretion in ordering the landlord to remove the new building). Thus, I conclude that the injury threatened to Folsom far outweighs that threatened to Stagg Run; as a result, my analysis of the *730 third element weighs in favor of the requested injunction.
Finally, I find no recognizable public interest in an undeveloped residential subdivision. Thus, my analysis of the fourth element weighs in favor of issuing the requested injunction.
“A trial court has wide discretion in determining whether to grant a preliminary injunction, and its decree will not be disturbed on appeal unless an abuse of that discretion is shown. Nevertheless, a trial court may be found to have abused its discretion where the decree violates some established rule of law or principle of equity or shows a clear and palpable error which results in manifest injustice.”
Chunchula Energy Corp. v. Ciba-Geigy Corp., 503 So.2d 1211, 1216 (Ala.1987). Because Folsom established all the elements necessary for issuance of a preliminary injunction and because Stagg Run did not establish any legally recognized justification for its nonperformance of the condition stated in the recorded instrument, I conclude that the trial court exceeded its discretion in denying the requested injunction.
The main opinion concludes that the trial court considered the stated condition in the recorded instrument but found the condition “no longer applicable” because of the steep topography of Indian Trail and because the land lying between Indian Trail and Deer Mountain Circle was owned by a third party. In so concluding, the main opinion relies on the following language from the trial court’s judgment:
“Although executed in 1984, the document clearly contemplates the future relocation of the driveway. This particular provision contained several conditions, some of which are no longer applicable. However, it is the court’s opinion and finding that the overall intent of the parties to that document included the re-location of the driveway and the parties herein are successors in interest to the parties in that document.”
Whether the main opinion interprets that “no longer applicable” language as excusing Stagg Run’s compliance with the condition stated in the recorded instrument or as permitting its noncompliance on the basis of impossibility of performance is unclear. However, I find neither to be justified.
The evidence before the trial court established that Deer Mountain Circle was located one-half mile from Indian Trail and that both Indian Trail and Deer Mountain Circle existed at the time the 1984 easement was created. The grantor of the easement, Robert Burr, Sr., owned property adjacent to Folsom’s property, and, therefore, it is reasonable to infer that he was well aware of the topography of the land in that vicinity in 1984.
Further, the only testimony before the trial court addressing the topography of the land surrounding Indian Trail was given by Melissa Cosby and Homer Dobbs, Sr., the developer and a member of Stagg Run. When asked about the steepness of the topography of the Indian Trail area, Cosby testified that she did not know if it would be difficult to build a road off of Indian Trail and that she had never examined Indian Trail in that context. She specifically declined to characterize the topography of Indian Trail as “difficult.”
Dobbs testified that he could not “take a road or develop a road from Indian Trail up to ... [Stagg Run’s] property” because he would have to cross someone else’s property. He also added that the “topography down there on the north side of this is so severe that I doubt it would be practical to try to put a road through there.” However, he admitted he was not *731 an expert and that he had not consulted with anyone to determine whether a road could be built from Indian Trail. Further, the evidence before the trial court did not establish that the topography in the area had changed at all since the drafting of the 1984 easement.
Further, Stagg Run purchased the land surrounding Folsom’s property with actual or constructive knowledge of the obligation created by the recorded instrument. Additionally, due to the lack of evidence as to the date the third party purchased its property, it appears that Stagg Run purchased its property with actual or constructive notice that a third party privately owned the land over which Folsom’s driveway would have to be relocated in order to comply with the condition stated in the recorded instrument. However, Stagg Run did not in any way attempt to comply with the condition in the recorded instrument.
Although an exhaustive review of cases addressing excused performance and impossibility of performance would be impracticable, this case does not fit within either of those legal theories. See, e.g., 17A Am.Jur.2d Contracts § 644-698 (2004) (discussing excuses for nonperformance of a contract). Applying those sections of Am.Jur.2d to the evidence in this case, it is appears there has been no change in the conditions existing at the time the contract (the recorded instrument) was made, see § 644; there was no evidence presented to constitute excuse or fraud discovered after a breach of the contract (the recorded instrument), see § 645; there has been no frustration of the principal purpose for which the contract at issue (the recorded instrument) was made, see § 651; and, as recognized in § 647, difficulty, hardship, or financial loss is an insufficient basis to release a party from a binding contract— “The inconvenience or the cost of compliance, even if resulting in hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do something that is possible and lawful, since the courts cannot alter contract obligations because they work a hardship.” For these reasons, I find no justification for excusing Stagg Run from compliance with the stated condition in the recorded instrument.
I also conclude that the language of the trial court’s order should not and cannot be construed as a finding of impossibility of performance by Stagg Run. First, Stagg Run failed to present sufficient evidence to support such a finding; the only evidence relevant to building a road off of Indian Trail was from Dobbs, who testified that it would not be practical — not impossible — to relocate the easement off of Indian Trail.
Second, even if this court is inclined to conclude that financial impracticability is equivalent to impossibility, the evidence in this case was insufficient to reach that conclusion on a motion for a preliminary injunction. Stagg Run presented no expert testimony, no financial data, and nothing other than the self-serving testimony of Dobbs, who admitted that he never even investigated the possibility of placing the driveway off of Indian Trail. Stagg Run did not establish that it could not comply with the legally binding condition in the recorded instrument.
Finally, the main opinion concludes that the trial court was authorized, in its discretion, to “balance the equities” between the parties in deciding whether to grant the injunction. I recognize the discretion granted to trial courts to balance the equities among the parties, all other factors being equal. However, in this case, it cannot be disputed that Folsom has a legally protected right to his easement, that the recorded instrument allows relocation of his driveway only if the new driveway comes off of Indian Trail, and that the *732 irreparable harm to Folsom outweighs the harm to Stagg Run. Additionally, Stagg Run undertook the development with full knowledge of Folsom’s objection to the relocation of his driveway. Further, it appears that Stagg Run purchased its property with actual or constructive knowledge that a third party owned the property over which it would be required to relocate Folsom’s driveway. However, Stagg Run proceeded with its plan to develop the subdivision anyway. I do not find that the equities are in Stagg Run’s favor. For these reasons, I respectfully dissent.
BRYAN, J., concurs.

. During the hearing on Folsom’s motion for a preliminary injunction, the trial court indicated its disagreement with the language and result of Magna, Inc. v. Catranis, supra.