Rel: July 3, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0100
_____

### 790 Montclair, LLC

v.

### The Station at Crestline Heights, LLC; Valley National Bank; Ard Contracting, Inc.; Birmingham Metro, LLC; Alabama Hoops RE, LLC; Trinity Montclair 800, LLC; Trinity Montclair 820, LLC; and Birmingham Metro Baptist Association

### Appeal from Jefferson Circuit Court
### (CV-22-902511)

SELLERS, Justice.

790 Montclair, LLC, appeals from an order of the Jefferson Circuit Court ("the trial court") denying its request for a preliminary injunction against The Station at Crestline Heights, LLC ("the Station"). 790 Montclair sought the injunction based on the Station's construction of an entrance to its parcel of property that, 790 Montclair claimed, violated a reciprocal easement.[1]  We affirm.

## I.  Facts

The property at issue, formerly a hospital campus, is located in Jefferson County and was once owned by Baptist Health System, Inc., and Baptist Health System Properties, LLC ("the Baptist entities"). In December 2018, the Baptist entities executed a "Declaration of and Agreement Granting Reciprocal Easements and Agreement" ("the 2018 easement agreement"), granting easements and rights with respect to, among other things, access, ingress, and egress over and across parcels of property within the hospital campus.  Relevant here, Section 2(a) of the 2018 easement agreement provides "[n]on-exclusive easements for

---

[1]The other named appellees in this case are the other owners of property subject to the  easement or somehow associated with the owners thereof: Valley National Bank; Ard Contracting, Inc.; Birmingham Metro, LLC; Alabama Hoops RE, LLC; Trinity Montclair 800, LLC; Trinity Montclair 820, LLC; and Birmingham Metro Baptist Association.

ingress, egress and access across the Access Facilities." The 2018 easement agreement defines "access facilities" as follows:

> "'Access Facilities' means the private drives, pedestrian bridges and <u>sidewalks located on the Parcels</u>, including but not limited to Dan Hudson Drive, Medical Park Drive and the driveway that traverses the BHS Property from Medical Park Drive to the back parking lot of the BHSP Property, <u>which are depicted on Exhibit 'C'</u> which is attached hereto and incorporated herein by reference, as the same are modified from time to time."

(Emphasis added.)

Section 2 of the 2018 easement agreement also provides, in relevant part: "Notwithstanding anything herein to the contrary, [the owners of the parcels] shall have the right to use the Easement Areas for their own use for the purposes set forth in this Section 2 and for other purposes that do not materially interfere with the use and enjoyment of the Easements." Section 3 of the 2018 easement agreement states that the access facilities "shall not be altered, relocated or removed, without the prior written approval of all Owners, which approval may be granted or withheld by each Owner in its sole and absolute discretion." After the 2018 easement agreement was recorded in the Jefferson County Probate Office, the Baptist entities sold parcels of property to, among others, 790 Montclair and the Station. In July 2021, the Station began construction

3

of a 277-unit apartment complex on its parcel -- a $60 million investment. According to the Station, the City of Birmingham ("the City") generally requires apartment complexes with more than 200 units to have at least 2 points of access for fire and emergency vehicles. In this case, one access point was located at 52nd Street, and the only other possible access point was Dan Hudson Drive. In November or December 2021, the City approved the Station's request for a "curb cut" or entrance that would connect the Station's property to Dan Hudson Drive. On August 24, 2022, some 7 months after the "curb curt" was completed, 790 Montclair commenced an action seeking, among other things, preliminary and permanent injunctive relief.[2] In its complaint, 790 Montclair argued that the Station had violated the 2018 easement agreement by altering the sidewalk on Dan Hudson Drive without 790 Montclair's prior permission and that 790 Montclair was entitled to an injunction requiring the Station to restore the sidewalk back to its original condition. The trial

---

[2]790 Montclair also filed a verified request for a temporary restraining order ("TRO"). Judge Tamara Harris Johnson, in her capacity as duty judge, issued the TRO, enjoining the Station, Ard Contracting, and Valley National Bank from accessing Dan Hudson Drive from the Station's property. The TRO remained in effect until April 2023.

court conducted multiple evidentiary hearings, heard live testimony, and considered numerous documents, exhibits, affidavits, and briefs. After considering all the evidence, the trial court entered an order denying 790 Montclair's request for a preliminary injunction. The trial court concluded, in relevant part, that the sidewalk on Dan Hudson Drive where the Station had made its curb cut was not an access facility as defined in the 2018 easement agreement. This appeal followed. See Rule 4(a)(1)(A), Ala. R. App. P.

## II. Standard of Review

"A party seeking a preliminary injunction must demonstrate (1) that the party would suffer irreparable harm without the injunction, (2) that the party has no adequate remedy at law, (3) that the party has at least a reasonable chance of success on the ultimate merits of the case, and (4) that the hardship that the injunction will impose on the opposing party will not unreasonably outweigh the benefit accruing to the party seeking the injunction. Holiday Isle, LLC v. Adkins, 12 So. 3d 1173, 1176 (Ala. 2008)."

Bethel v. Franklin, 381 So. 3d 1121, 1126 (Ala. 2023).

When reviewing an order granting or denying a preliminary injunction, this Court reviews the trial court's legal rulings de novo and its ultimate decision to grant or deny the preliminary injunction for an abuse of discretion. Bethel. Finally, because the trial court heard live

5

testimony in this case, its findings of fact are afforded a presumption of correctness, and its order based on those findings will not be disturbed on appeal unless they are clearly erroneous and against the great weight of the evidence. See State v. Epic Tech, LLC, 378 So. 3d 467, 478 (Ala. 2022) (noting that the ore tenus rule is applicable in preliminary-injunction proceedings).

### III. Discussion

#### A. The Trial Court's Order

Rule 65(d)(2), Ala. R. Civ. P., requires a trial court to set forth its reasons for issuing an injunction. Although the trial court in this case denied 790 Montclair's request for a preliminary injunction, it, nonetheless, entered a detailed order setting forth its findings of fact, conclusions of law, and reasons why 790 Montclair failed to meet its burden of demonstrating entitlement to injunctive relief. The dispositive issues in this appeal are whether the trial court exceeded its discretion in denying 790 Montclair's request for a preliminary injunction and, specifically, (1) in finding that the sidewalk on Dan Hudson Drive where the Station had made its curb cut or new entrance was not an access facility as defined in the 2018 easement agreement and (2) in finding that

6

790 Montclair had failed to demonstrate the necessary requirements for a preliminary injunction.

The 2018 easement agreement defines access facilities as "the private drives, pedestrian bridges and sidewalks located on the Parcels, including but not limited to Dan Hudson Drive …, which are depicted on Exhibit 'C' which is attached [to the 2018 easement agreement] and incorporated [in the 2018 easement agreement] by reference." 790 Montclair relies primarily on the phrase "located on the Parcels," without much, if any, consideration of the specific contents or depictions on Exhibit C. However, the 2018 easement agreement unambiguously defines access facilities as those facilities "located on the Parcels, … which are depicted on Exhibit C." It is undisputed that Exhibit C does <u>not</u> depict sidewalks on the east side of Dan Hudson Drive -- the side where the Station is located and where the curb cut was made. Exhibit C, on the other hand, <u>does</u> depict sidewalks on the west side of Dan Hudson Drive -- the side where 790 Montclair's building is located. Derek Meadows, the drafter of the survey on which Exhibit C is based, testified that a sidewalk on the east side of Dan Hudson Drive could have easily been drawn or depicted on Exhibit C, but was not. Further, 790

Montclair's attorney, Anne Raymond, participated in the drafting of the 2018 easement agreement and prepared Exhibit C. Raymond testified that 790 Montclair could have specifically requested language in the 2018 easement agreement precluding curb cuts or new entrances on Dan Hudson Drive, but did not. Amy S. Allen, the president and chief executive officer of the Baptist entities, testified in her deposition that she was the person who signed the 2018 easement agreement and that it was neither her intent to cut off parcel owners' rights to access their parcels, nor her intent that 790 Montclair could veto other parcel owners' rights to access their parcels. Allen stated that there was no dominant or subservient estate at issue in this case; rather, she said, the 2018 easement agreement gives all parcel owners subject to the easement nonexclusive access to Dan Hudson Drive and Medical Park Drive. Allen further indicated that the phrase "access facilities shall not be altered, relocated or removed" means that no changes should be made to the access facilities that would block access to another's parcel. Finally, both Walter Schoel, a licensed civil engineer, and Andrew Phillips, the project engineer for the Station's project, opined that the curb cut was not an alteration of Dan Hudson Drive. It is undisputed that the primary

8

purpose of the easement is to allow the parties subject to the easement, as well as their successors in interest, to utilize Dan Hudson Drive and Medical Park Drive to access their parcels. Thus, Dan Hudson Drive was expressly reserved as an access easement for the benefit of all the parcel owners who purchased their parcels from the Baptist entities. The 2018 easement agreement also expressly states that the owners of the parcels within the former hospital campus have the right to use the easement areas, including Dan Hudson Drive, for their own use and for other purposes that do not "materially interfere with the use and enjoyment of the Easement." The trial court noted that, after four days of testimony and during the evidentiary hearings, 790 Montclair presented no evidence to demonstrate how the new entrance from the Station's parcel to Dan Hudson Drive would interfere with 790 Montclair's use and enjoyment of the easement. Notably, the evidence was undisputed that 790 Montclair has no direct vehicular access to Dan Hudson Drive and that it uses Medical Park Drive almost exclusively to access its parcel. In fact, given the location of 790 Montclair's parcel, opening or closing access to Dan Hudson Drive would have no appreciable effect of enhancing or restricting the use and enjoyment of 790 Montclair's parcel.

Dan Hudson Drive is too remote for 790 Montclair to use for access or egress from its parcel. The trial court further noted that, if anything, the Station's curb cut or entrance accessing Dan Hudson Drive was an improvement to the easement. See Annotation, Right of Owner of Easement of Way to Make Improvements or Repairs Thereon, 112 A.L.R. 1303, 1303-04 (1938) (stating, in relevant part, that "[i]t is a general rule that the owner of an easement of way may prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes which it was created or acquired, causing neither an undue burden upon the servient estate, nor an unwarranted interference with the rights of common owners or the independent rights of others").

Based on the foregoing, we conclude that the trial court properly interpreted the 2018 easement agreement to conclude that access facilities are those facilities depicted on Exhibit C; that Exhibit C does not depict any sidewalks on the east side of Dan Hudson Drive where the curb cut was made; and that the curb cut was, therefore, not an alteration of an access facility, which required the prior written approval of all owners of parcels subject to the 2018 easement agreement.

## B. Requirements for a Preliminary Injunction

790 Montclair challenges only two of the trial court's findings regarding the requirements for a preliminary injunction. 790 Montclair asserts that the trial court erred in finding (1) that 790 Montclair would not suffer irreparable harm without the injunction because, it concluded, 790 Montclair had an adequate remedy at law and (2) that the hardship imposed on the Station by blocking access to its parcel from Dan Hudson Drive far outweighed any benefit to 790 Montclair. The trial court specifically found that, if 790 Montclair had actually been damaged in some way by the Station's curb cut or new entrance, then an award of damages would be available. In Water Works & Sewer Board of Birmingham v. Inland Lake Investments, LLC, 31 So. 3d 686, 692 (Ala. 2009), this Court stated:

> "'"[I]rreparable injury" is an injury that is not redressable in a court of law through an award of money damages.' Perley v. Tapscan, Inc., 646 So. 2d 585, 587 (Ala. 1994). The Court has likewise stated that '[a] plaintiff that can recover damages has an adequate remedy at law and is not entitled to an injunction.' SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So. 2d 706, 709 (Ala. 2005). Thus, 'a conclusion that the injury is irreparable necessarily shows that there is no adequate remedy at law.' Fleet Wholesale Supply Co. v. Remington Arms Co., 846 F.2d 1095, 1098 (7th Cir. 1988)."

11

(Footnote omitted.) See also <u>Martin v. First Fed. Sav. & Loan Ass'n of Andalusia</u>, 559 So. 2d 1075, 1079 (Ala. 1990) (noting that, when considering a motion for a preliminary injunction, "the trial court, in its discretion and given the facts and circumstances of each case, may consider and weigh the relative hardships that each party may suffer against the benefits that may flow from the grant of the preliminary injunction").

790 Montclair relies heavily on <u>West Town Plaza Associates, Ltd. v Wal-Mart Stores, Inc.</u>, 619 So. 2d 1290 (Ala. 1993), for the proposition that "an obstruction" of a property right is an injury or harm for which money damages are inadequate. 790 Montclair argues that the protection of property rights is paramount and that a party whose property is subject to an easement cannot be permitted to ignore the clear terms of the easement and then claim that "hardship" should allow its violation of those terms. In <u>West Town Plaza</u>, Wal-Mart subleased retail space from F.W. Woolworth Company. The "Overlease" and "Sublease" agreements at issue granted Wal-Mart an easement over a parking area consisting of approximately 30 to 34 parking spaces. Without Wal-Mart's consent, the lessor's assignee, West Town Plaza, constructed a building

that deprived Wal-Mart of its right to use the parking spaces. The trial court granted Wal-Mart injunctive relief, ordering West Town Plaza to remove the building and to restore the parking spaces. In affirming the trial court's order, this Court concluded that such "an obstruction of Wal-Mart's easement is clearly an injury or harm for which money damages are inadequate." Id. at 1296. Importantly, this Court also noted that, "'[t]he owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate, and a court of equity has jurisdiction to enjoin the obstruction of private easements and to require the removal of such obstructions.'" Id. (quoting Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So. 2d 153, 155 (1963)). West Town Plaza is distinguishable insofar as it involved a dominant and servient estate. As previously indicated, Allen, the president and chief executive officer of the Baptist entities, testified in her deposition that there was no dominant or servient estate at issue in this case; rather, she testified, the 2018 easement agreement gives all the parcel owners subject to the easement nonexclusive access to Dan Hudson Drive. Accordingly, the trial court did not err in finding that, to the extent 790 Montclair had been damaged by the curb cut, it had an

13

adequate remedy at law, i.e., an award of money damages. It further did not err in finding that the hardship imposed on the Station by blocking access to its parcel from Dan Hudson Drive far outweighed any benefit to 790 Montclair. As previously indicated, the sidewalk on Dan Hudson Drive where the Station had made its curb cut or new entrance was not an access facility as defined in the 2018 easement agreement; 790 Montclair presented no evidence to demonstrate how the new entrance from the Station's parcel to Dan Hudson Drive would interfere with 790 Montclair's use and enjoyment of the easement; and the primary purpose of the 2018 easement agreement is to allow the parties subject to the easement, as well as their successors in interest, to utilize Dan Hudson Drive and Medical Park Drive to access their parcels. Accordingly, the trial court did not exceed its discretion in finding that 790 Montclair had failed to demonstrate its entitlement to injunctive relief.

## IV. Conclusion

Based on the foregoing, we affirm the order of the trial court denying 790 Montclair's request for a preliminary injunction.

AFFIRMED.

Stewart, C.J., and Wise, Mendheim, Cook, McCool, and Lewis, JJ., concur.

Shaw and Bryan, JJ., concur in the result.